[No. A072853. First Dist., Div. Five. Sept. 24, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST LANDRY, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## Counsel

E. Evans Young, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Richard Rochman and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PETERSON, P. J.**—Following a jury trial, appellant was found guilty of possession of heroin for sale (Health & Saf. Code, § 11351) and escape (Pen. Code,[1] § 4532, subd. (b)). Four prior felony convictions were found true, all of which were found to be three strikes priors pursuant to section 667, subdivision (d)(1). Appellant was sentenced to 50 years to life. Appellant contends: (1) that this court erred in failing to grant his request to augment the record with the transcript of the entire jury voir dire under California

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

Rules of Court, rule 12 (state rule 12); (2) that the trial court erred in failing to instruct the jury sua sponte on the lesser included offense of simple possession of heroin; and (3) that he was improperly sentenced under the three strikes law. We agree with the People that the matter must be remanded for resentencing. In all other respects, we affirm.

## I. DENIAL OF MOTION TO AUGMENT THE APPELLATE RECORD

██ Appellant claims that this court denied him effective appellate review of the trial court's ruling on his motion under *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*) when it failed to provide him a free verbatim transcript of the entire jury voir dire. The facts underlying this contention are undisputed. The record in this appeal was filed on March 12, 1996. In a motion to augment filed on March 18, 1996, appellant requested the reporter's transcript of the voir dire of all prospective jurors.

In support of the request, appellant noted that trial counsel had made a motion pursuant to *Wheeler*, based on the prosecutor's use of peremptory challenges against three Black prospective jurors. The appellate record furnished to appellant's counsel contained the voir dire of the three challenged jurors and the argument and ruling on appellant's *Wheeler* motion. The trial court had found that a prima facie case had been established, but denied the motion after finding that the prosecutor's explanations were race-neutral. Based on the explanations offered by the prosecutor in defense of his challenge, appellant requested the entire voir dire in order to evaluate the propriety of the trial court's denial of the *Wheeler* motion.

In its initial order dated March 29, 1996, denying appellant's application, this court cited Court of Appeal, First Appellate District Rules, rule 6(d) (Deering's Cal. Civil Practice Codes (1996 Desktop ed.) p. 2377) (local rule 6(d)).[2] The order stated that it was denied "without prejudice to renewal." (Haning, J.) Appellant filed a request for reconsideration of his application. In support of the request, appellant pointed out that the prosecutor had cited a Black prospective juror's affiliation with an educational institution as one reason for exercising a peremptory challenge against her. Appellate counsel submitted a declaration stating that appellant's trial counsel recalled at least one other non-Black prospective juror who was affiliated with education, but who was not challenged by the prosecution. This declaration was hearsay,

---

[2]Local rule 6(d) provides, "A motion to augment the reporter's transcript shall identify the portion of the record with specificity, including the reporter and date of hearing. It shall establish with some certainty how the requested materials may be useful on appeal. Requests for jury voir dire should specify the exact questioning by which counsel of which juror together with the reason justifying the request."

subject to a challenge for presenting a second-hand statement of fact, and by no means constituted a conclusive statement of the truth of the matter. On May 6, 1996, this court issued an order denying appellant's request for reconsideration. (Peterson, P. J.)

As noted, the appellate record furnished to appellant contains the voir dire of the three challenged jurors and the argument and ruling on appellant's *Wheeler* motion. We have reviewed the record. The prosecutor in this case used three of his peremptory challenges to excuse Blacks from the jury. After the third challenge, appellant made a *Wheeler* motion, claiming the prosecutor's reasons for excusing these jurors were disingenuous. The prosecutor was then required to offer race-neutral explanations for exercising his peremptory challenges.

According to the prosecutor, he struck one of the Black prospective jurors, Belcher, for the following reasons: Belcher had sought a hardship excuse from the jury because he had a business trip planned. While the hardship excuse was denied, the prosecutor believed Belcher would prefer to go on the business trip rather than serve on the jury. The prosecutor explained, "Since we have so many challenges and so many potential jurors, I'd rather get twelve people that have absolutely no other obligations to keep them from jury service."

The second Black prospective juror, Everhart, was a teacher, a factor that the prosecutor counted against her. He explained, "I've had plenty of trouble with teachers I've left on juries. I think they are more apt to get sidetracked. They are more apt to go down roads that [are] pointed out to them by [the] defense." Also, Everhart was corresponding with a relative serving a prison sentence for murder, which the prosecutor believed "showed a certain sympathy to a person that has been convicted of a very serious crime." The prosecutor expressed his concern that Everhart's "sympathy might fall over to the defendant in this case." Also, Everhart was on the board of a drug treatment program which the prosecutor thought showed "sympathy for people going through that type of problem" which might "spill over" to appellant.

It suffices to say that the record supports the trial court's conclusion that these two Black prospective jurors, Belcher and Everhart, were excused because of individual, race-neutral factors. In fact, in ruling on appellant's *Wheeler* motion, the trial court noted, "If all we had were jurors Everhart and Belcher, I wouldn't even require an explanation." Appellant does not contend otherwise.

Because the prosecutor's explanation with respect to the other Black prospective juror, Thomas, serves as the springboard for appellant's request

for augmentation, we set it out in some detail. The prosecutor's overall impression of Thomas was that she "represented a type of person that might make decisions not based on facts and the simple application of facts to the law, but might make decisions based on pity or sympathy or prejudice in favor of Mr. Landry or in favor of the defendant or against the prosecution." The prosecutor supported this overall impression with three objective factors: (1) Her educational background was in psychiatry or psychology, which the prosecutor perceived as a negative because he "had very bad experiences with jurors who have had any sort of relationship, however tangentially, to that area of study or thought." (2) She worked at Stanford in a youth services agency, and the prosecutor reiterated that he did "not have very good luck with people who are tied to education in any way. . . . They are more likely to take or go down strange paths that might be pointed out to them by the defense." (3) She was in youth services, which the prosecutor believed indicated "a certain sympathy or do gooderness that might not make her a fair and impartial juror for the prosecution."

On appeal appellant contends that the denial of his motion for augmentation violated his constitutional right to due process and equal protection and infringed upon his right to the effective assistance of counsel on appeal. It is clear from appellant's arguments in support of this issue that appellant seeks the entire transcript of voir dire to exploit the prosecutor's challenge to prospective juror Thomas based on her ties to education by engaging in a comparison with any nonminority juror who also had ties to education but who was not challenged by the prosecutor. First, we note that in making the *Wheeler* motion below, no claim was made that the prosecutor was using his challenges inconsistently depending on the race of the juror, depriving the prosecutor of the opportunity to create a record on this point. As pointed out in *People* v. *Dunn* (1995) 40 Cal.App.4th 1039, 1051 [47 Cal.Rptr.2d 638] (*Dunn*), "Without such an explanation, any attempt at comparative juror analysis is questionable."

Secondly, the comparison appellant seeks to make is one-sided since it ignores several other characteristics, beside an educational background, cited by the prosecutor in exercising his peremptory challenge against Thomas. The prosecutor also pointed out that Thomas had a background in psychiatry or psychology and that he had "very bad experiences" with such jurors. He also cited the fact that Thomas worked with youth services, which made him concerned that she might be biased in appellant's favor. Courts have recognized the race neutrality of similar explanations. (See, e.g., *People* v. *Barber* (1988) 200 Cal.App.3d 378, 394 [245 Cal.Rptr. 895] [A juror was challenged because of profession based on the prosecutor's belief that kindergarten teachers are often liberal and not prosecution oriented.]; *People* v.

*Granillo* (1987) 197 Cal.App.3d 110, 120, fn. 2 [242 Cal.Rptr. 639] ["Many prosecutors believe various professional people are unacceptable because they may be too demanding or they look for certainty."]; *U.S.* v. *Thompson* (9th Cir.1987) 827 F.2d 1254, 1260 [Excluding jurors because of their profession is wholly within the prosecutor's prerogative.].) Because the record before us demonstrates that the trial court found at least one legitimate race-neutral explanation for each questioned peremptory challenge, no abuse of discretion can possibly be shown. (*People* v. *Pride* (1992) 3 Cal.4th 195, 230 [10 Cal.Rptr.2d 636, 833 P.2d 643].)

██ Furthermore, under authority of the California Supreme Court, an appellate court is not allowed to compare the responses of rejected and accepted jurors to determine the bona fides of the justifications offered. (*People* v. *Montiel* (1993) 5 Cal.4th 877, 909 [21 Cal.Rptr.2d 705, 855 P.2d 1277] (*Montiel*).) The *Montiel* opinion unequivocally states: "[A]n appellate court will not reassess good faith by conducting its own comparative juror analysis. Such an approach would undermine the trial court's credibility determinations . . . ." (*Ibid.*; *People* v. *Arias* (1996) 13 Cal.4th 92, 136 [51 Cal.Rptr.2d 770, 913 P.2d 980].) Thus, our Supreme Court has indicated that for purposes of both *Wheeler* and *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712], an appellate court should not conduct such an inquiry on its own. (*Montiel, supra,* 5 Cal.4th at p. 909; see also *People* v. *Jackson* (1996) 13 Cal.4th 1164, 1195-1198 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1221 [255 Cal.Rptr. 569, 767 P.2d 1047].) No contrary United States Supreme Court decision exists on this issue, and we are bound by our high court's interpretation of federal law. (See, e.g., *Dunn, supra,* 40 Cal.App.4th at p. 1050.)

██ We now turn to the denial of appellant's request for augmentation of the record with the complete jury voir dire. In *People* v. *Gaston* (1978) 20 Cal.3d 476 [143 Cal.Rptr. 205, 573 P.2d 423] (*Gaston*), the California Supreme Court clarified the standard for obtaining augmentation pursuant to state rule 12. The court stated: "[T]he litigant need only establish with some certainty *how* the materials he requests may be useful to him on appeal. The showing of 'some certainty' must be made as to the *manner* in which the materials may be useful, not as to the contents of the materials themselves." (*Gaston, supra,* at p. 482, italics in original.) In a companion case, *People* v. *Silva* (1978) 20 Cal.3d 489, 493 [143 Cal.Rptr. 212, 573 P.2d 430] (*Silva*), the court went on to explain that an augmentation request should be granted when the transcript "may be useful to appellant to support the theories he articulates for reversal . . . ." The court stressed that the motion to augment was designed to be a relatively routine proceeding and not a vehicle for deciding substantive issues on their merits. "Rather, these issues should be

decided only after full briefing and oral argument on the complete record." (*Gaston, supra*, 20 Cal.3d at p. 484, fn. 10.)[3]

 Consequently, this issue turns on whether appellant has met the standards for motions to augment established by *Gaston* and *Silva* by showing with "some certainty" that the transcript of the entire jury voir dire might be useful to him to support the theory he articulates for reversal. The theory appellant articulates for reversal—the theory to which his augmentation request is directed—is engaging in a comparison of answers given by Black prospective jurors who were challenged and answers given by non-Black prospective jurors who were not challenged to demonstrate that the prosecutor's reasons for excusing Black prospective jurors were not credible. As we have seen, this court is precluded from conducting such an analysis, making the transcript of the entire voir dire wholly unnecessary to decide the appropriateness of the trial court's rejection of appellant's *Wheeler* challenge.

The fact that no contention of inconsistent prosecution challenges was made at trial, and that legitimate race-neutral reasons for the challenges were found by the trial court to have been presented, demonstrates clearly the irrelevance of appellant's augmentation request. His request for the entire jury voir dire is related only to a theory for reversal which is simply not cognizable on appeal. We see nothing in *Gaston* or *Silva* that compels us here to grant such a request. The record on appeal contains everything that is necessary for counsel to brief the *Wheeler* issue and for this court to render its decision, negating any contention that appellant's constitutional rights were violated by this court's denial of appellant's request for the entire jury voir dire. While an indigent defendant may not be deprived of "the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners" (*Britt* v. *North Carolina* (1971) 404 U.S. 226, 227 [30 L.Ed.2d 400, 403, 92 S.Ct. 431]), the state need only provide " 'a record of sufficient completeness' to permit proper consideration of [an indigent defendant's] claims" (*Draper* v. *Washington* (1963) 372 U.S. 487, 499 [9 L.Ed.2d 899, 907, 83 S.Ct. 774]). In the instant case, the

---

[3]It is unnecessary for us to catalogue the critical comment that has been directed at the standard for augmentation established by our Supreme Court. The essence of that criticism is expressed by the dissenting opinions of Justice Richardson in *Gaston* and *Silva*. Furthermore, the administrative presiding justice of this court has perceptively written that "Motions to augment the record are a significant source of delay, especially in criminal cases" and often arouse suspicion as being "ploys for additional time to complete the brief." (Anderson, *Are the American Bar Association's Time Standards Relevant for California Courts of Appeal?* (1993) 27 U.S.F. L.Rev. 301, 317.) Nevertheless, we have no power to limit or review the *Gaston* holding. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

transcript of the complete jury voir dire is wholly unnecessary to permit a proper consideration of appellant's claims under *Wheeler*. Appellant has been furnished a constitutionally complete record and was not denied appellate due process by rejection of augmentation of the voir dire examination he sought of jurors not implicated by trial counsel's *Wheeler* motion.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### IV. DISPOSITION

The case is remanded to the trial court for resentencing in order to afford the judge the opportunity to exercise his discretion to dismiss the strike priors if so inclined. In all other respects, the judgment is affirmed.

Haning, J., and Champlin, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 1997. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 785.
†Judge of the Napa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.