[No. A070504. First Dist., Div. Five. Oct. 25, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE SHAMBATUYEV, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, parts Background, I, III, IV, V, VI, VII, VIII and IX of this opinion are not certified for publication.

**COUNSEL**

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Monna Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HANING, J.**—Eugene Shambatuyev appeals his conviction by jury trial of robbery of a taxicab driver (Pen. Code,[2] § 212.5, subd. (a)) and first degree murder (§ 187). The jury found true allegations of firearm use (§ 12022.5, subd. (a)) and the special circumstance that the murder was committed

---

[2]Unless otherwise indicated, all further statutory references are to the Penal Code.

during the commission of a robbery (former § 190.2, subd. (a)(17)(i) as amended by initiative [Prop. 115] on June 5, 1990).[3] Appellant was sentenced to life without the possibility of parole. He raises numerous claims of error. We affirm.

BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II

██ Appellant next contends the court erred in denying his challenge for cause to prospective juror Susan L., and argues that the error forced him to use one of his twenty peremptory challenges to remove her from the venire.

During voir dire, defense counsel asked if any of the prospective jurors had anything to say about "the gun issue." Ms. L. responded, "I have a strong reason, because I'm from the Republic of China and I think killers should be killed, too. I don't think I would make a good juror." Thereafter the following colloquy occurred:

"THE COURT: No. Ms. L., I don't think you mean you can't be fair. Can you be fair to both sides? That's the only question now. Can you be fair to both sides?

"[DEFENSE COUNSEL]: You've been intimidated. Let me just ask you this. Can you be fair to this man? That's my interest.

"[JUROR]: Uh-huh.

"[DEFENSE COUNSEL]: Do you feel you can?

"[JUROR]: I don't know.

"[DEFENSE COUNSEL]: You don't know. All right."

---

[3]Effective January 1, 1996, the felony with which appellant was charged was renumbered without substantive change as section 190.2, subdivision (a)(17)(A). (Stats. 1995, chs. 477 & 478.)

*See footnote 1, *ante*, page 267.

After both sides finished questioning the venire the prosecutor passed for cause. Defense counsel stated, "I'm wondering about pursuing [Ms.] L." Thereafter the following colloquy occurred:

"THE COURT: Ms. L., could you give both sides a fair trial?

"[JUROR]: I don't know.

"THE COURT: I'm not going to excuse you, now, Ms. L. I don't want to embarrass you. My question right now is: Could you give both sides a fair trial?

"[JUROR]: I'll try, but I'm not sure.

"[DEFENSE COUNSEL]: She has some hesitancy.

"THE COURT: I'm going to deny your motion."

Defense counsel used his 19th peremptory challenge on Ms. L. and thereafter exercised his final challenge. Later, outside the presence of the jury, the following took place:

"THE COURT: I want to comment on the record as to why I did not dismiss [Ms. L.]. I felt—based on her conduct and her answers, I felt she was trying to on purpose cause me to excuse her from the jury, and I felt that was wrong. I felt she understood the language. I felt she could be fair. I felt her comments were made just so she wouldn't serve on this jury, and that was my reading of the situation. That was why [defense counsel], I denied your motion. Okay, sir?

"[DEFENSE COUNSEL]: Fine. What I heard her say was: killers should be killed, and I thought that should prompt me to ask some questions.

"THE COURT: Right. And I felt that she said that just to try to get off this jury, and I pursued it further. And that's why I denied your motion."

 Trial courts have a duty to ensure that defendants in criminal jury trials receive a fair and impartial jury. (*People* v. *Mattson* (1990) 50 Cal.3d 826, 845 [268 Cal.Rptr. 802, 789 P.2d 983]; *People* v. *Fimbres* (1980) 104 Cal.App.3d 780, 788 [163 Cal.Rptr. 876].) The failure to excuse potential jurors who cannot commit to fairness and impartiality not only denies the accused due process, but contributes to the escalation of needless appeals.

 "To preserve a claim of error in the denial of a challenge for cause, the defense must either exhaust its peremptory challenges and object to the

jury as finally constituted or justify the failure to do so." (*People* v. *Kirkpatrick* (1994) 7 Cal.4th 988, 1005 [30 Cal.Rptr.2d 818, 874 P.2d 248].) If the defendant can show that his right to an impartial jury was affected because he was deprived of a peremptory challenge which he would have used to remove the juror in question, he is entitled to reversal; he need not show that the outcome of the case would have been different. (*People* v. *Bittaker* (1989) 48 Cal.3d 1046, 1087-1088 [259 Cal.Rptr. 630, 774 P.2d 659].)

The People contend appellant waived this issue because he failed to object to the jury as finally impaneled and failed to seek an additional peremptory challenge. (See *People* v. *Terry* (1994) 30 Cal.App.4th 97, 103-104 [35 Cal.Rptr.2d 729].)

Appellant rejoins that his due process rights were violated by our denial of his two requests to augment the appellate record to include the entire voir dire transcript. In particular, he argues that without the entire voir dire transcript, it cannot be said that he neglected to inform the trial court of his dissatisfaction with the jury as impaneled following his peremptory challenge of Ms. L.

We granted the augmentation request as to the transcript of Ms. L.'s voir dire, but denied the request for the balance of the voir dire after determining there was an insufficient showing of necessity, and noncompliance with appellate local rule 6(d).[4] That rule states: "A motion to augment the reporter's transcript shall identify the portion of the record with specificity, including the reporter and date of hearing. It shall establish with some certainty how the requested materials may be useful on appeal. Requests for jury voir dire should specify the exact questioning by which counsel of which juror together with the reason justifying the request." (Ct. App., First Dist., Augmentation of Record, rule 6(d) [West's Cal. Rules of Court (State ed. 1996 rev.) pp. 945-946].)

Appellant's augmentation requests fail to provide any supporting factual basis. Although he exhausted his peremptory challenges, appellant eliminated the juror he contends should have been removed for cause. He does not indicate that the voir dire transcript he seeks will demonstrate an objection to the jury as finally constituted (*People* v. *Kirkpatrick, supra,* 7 Cal.4th at p. 1005), a motion for an additional peremptory challenge (*People* v. *Terry, supra,* 30 Cal.App.4th at p. 104; *People* v. *Bittaker, supra,* 48 Cal.3d at p. 1087), or justification for his failure to so move or object.

---

[4]For convenience we refer to Court of Appeal, First District, Augmentation of Record, rule 6(d), as appellate local rule 6(d).

Appellant could have provided evidence that the voir dire transcript he seeks contained the required showing through a declaration by trial counsel (*People* v. *Hill* (1967) 67 Cal.2d 105, 123, fn. 11, 124-125 [60 Cal.Rptr. 234, 429 P.2d 586]) or the court reporter, or by the minutes. He did not do so, nor did he provide an explanation why such declarations or other evidence were unattainable. His failure to do so leaves us with no alternative other than to reject this claim of error.

We also observe that given today's technology we seem to spend more time addressing motions to augment the record than we would if we simply generated a complete record at the outset. (See, e.g., *People* v. *Landry* (1996) 49 Cal.App.4th 785 [56 Cal.Rptr.2d 824].)

In criminal appeals the attorney for the appealing defendant is rarely the same attorney who tried the case. Consequently, the only manner by which appellate criminal counsel can gain an understanding of all possible issues and prepare the appeal is by review of the trial record. ■ Both the federal and state Constitutions require that criminal defendants receive the effective assistance of counsel (*In re Fields* (1990) 51 Cal.3d 1063, 1069 [275 Cal.Rptr. 384, 800 P.2d 862]), which requires a " ' "diligent conscientious advocate" ' " (*In re Cordero* (1988) 46 Cal.3d 161, 180 [249 Cal.Rptr. 342, 756 P.2d 1370]) making a "rational and informed decision on strategy and tactics founded on adequate investigation and preparation." (*In re Fields, supra,* 51 Cal.3d at p. 1069) Counsel is expected to fully investigate and research all available defenses. (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839]; *In re Cordero, supra,* 46 Cal.3d at p. 180; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) These standards apply to appellate attorneys as well as trial attorneys (see, e.g., *In re Smith* (1970) 3 Cal.3d 192, 202-203 [90 Cal.Rptr. 1, 474 P.2d 969]), and it seems self-evident that the minimum expected of appellate counsel is that they will personally and thoroughly review the entire trial record.

■ In spite of all this, the existing rules do not provide indigent criminal defendants with a complete record of the trial. The voir dire record is not prepared at state expense as part of the normal record on appeal. (Cal. Rules Ct., rule 33(a)(2).)[5] *Wheeler/Batson*[6] errors are not the only errors that can occur during voir dire, but appellate counsel for indigent defendants cannot obtain the voir dire record to examine it for such error, although those defendants who can afford it can do so. Appellate counsel for indigents in

---

[5]For convenience we refer to California Rules of Court, rule 33(a)(2) as rule 33(a)(2).

[6]*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] and *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712].

the First District must comply with appellate local rule 6(d). This in turn usually requires some assistance from trial counsel, but experience has shown that such assistance is not always forthcoming, or arrives late.

Rule 33(a)(2) and appellate local rule 6(d) are designed, at least in part, to reduce delay and expense, both of which are commendable. However, for some time now we have had the technology to deliver complete and instantaneous reporter's and clerk's transcripts. Not only can we produce them immediately after the trial's end, but we can deliver them in a format that permits electronic search and retrieval of information in the same manner as we search other electronic databases. The preparation of such records not only reduces delay in record production, it also eliminates the need for any motions to augment in all cases, reduces the cost of appeals and accelerates the entire appellate process. We are approaching the 21st century, and it is unfortunate that we still rely on 19th century procedures in many of our judicial processes.

III-IX*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Champlin, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied February 5, 1997.

---

*See footnote 1, *ante*, page 267.

†Judge of the Napa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.