[Crim. No. 11227. Fourth Dist., Div. One. July 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID THOMAS EVANS, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, Douglas Brown and Elaine A. Alexander for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, and A. Wells Petersen, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COLOGNE, Acting P. J.**—Pursuant to a plea bargain made after his motion to suppress was denied, defendant David Thomas Evans pled guilty to two counts of obtaining controlled substances by fraud (Health & Saf. Code, § 11173, subd. (a)). He appeals after the court granted him probation.

In February 1978, Evans rented a room at the Mission Bay Motel managed by Mr. and Mrs. Bellman. At Evans' request, Mrs. Bellman drove him to a pharmacy where he paid for a prescription of Quaaludes with the $20 he had. He then had her drive him to Ocean Beach where he took the pills into an apartment which was soon visited by several people. After an hour and a half or so, he returned without the pills and with over $200 in cash.

Suspicions aroused, Mrs. Bellman and her husband began paying attention to Evans' activities at the motel. They checked his trash and found numerous empty prescription bottles for about 691 doses of Dilaudid issued over a 50-day period, and 149 doses of Quaalude filled over a 22-day period, with at least 5 different prescribing doctors. They noticed foot traffic in and out of his room normally occurring after he would return from a doctor's visit. The Bellmans also listened in to telephone conversations had by Evans pertaining to doctor's appointments scheduled at a rate of as many as two a day, telling when the appointments should be completed and he could be back in business, and discussing quantities and prices. Visitors and callers usually told Evans, "Pete sent me."

On March 6, the Bellmans called the police and told their suspicions to narcotics task force Officer Thomas L. Shotts. Shotts told the Bellmans to stop collecting Evans' trash and listening in on his telephone calls. Shotts then began watching Evans' activities which included many visitors to his room, a trip to a pharmacy and a delivery of two Quaalude pills to Peter Coward by leaving an envelope at the motel desk. Coward was arrested and other visitors were seen at the motel room.

Shotts and his partner W. Flores put into operation a plan to purchase either Quaalude or Dilaudid from Evans. They knocked on the door and, when it was opened, told Evans they had talked to "Pete" who said they could pick something up there. Evans had a puzzled look on his face and said he did not know "Pete" or what they were talking about. Still at the threshold, the officers repeated the story and said they just saw Pete in the parking lot, at which point Evans opened the door fully and asked them to come in. Inside, they saw several prescription bottles and continued the discussion about who "Pete" was. After about two minutes, other uniformed officers who had been listening to the conversation by radio arrived and knocked on the still open door, announcing their purpose. Shotts and Flores then advised Evans he was under arrest, telling him, "Well, if you're not going to sell it to us, you're under arrest anyway." Evans signed a consent to search form and the officers seized additional evidence in the room.

Evans' suppression motion was founded on an assertion the officers did not have probable cause to arrest and did not comply with the Penal Code section 844 knock and announce requirements. On this appeal, he

contends he was ineffectively represented by counsel's having failed to challenge the search on the basis of the arrest warrant requirement of *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], pertaining to arrests in one's home.

■ From the cases, it is clear once officers having probable cause are admitted inside a defendant's home by use of a nonforceful strategy to gain entry, compliance with Penal Code section 844 is not required (*People* v. *Veloz* (1971) 22 Cal.App.3d 499, 503 [99 Cal.Rptr. 519]; see also *People* v. *McCoy* (1974) 40 Cal.App.3d 854, 861-862 [115 Cal. Rptr. 559]). Similar considerations underlie the arrest warrant requirement of *People* v. *Ramey, supra*, 16 Cal.3d 263, and it is fair to say that if the entry is sufficient to fulfill the Penal Code section 844 exceptions, it is also within the *Ramey* exceptions. Particularly is this so where the open to public, commercial motel premises is being used as much for a place of business as for a place of residence and the suspect apparently opens his door for anyone sent by a particular named individual. Shotts and Flores were inside with consent, with probable cause to arrest but with the intent to continue the investigation by effecting a purchase of Quaalude or Dilaudid. We find no violation of *Ramey* principles in the facts here, for it is the intrusion into, rather than the arrest in, the dwelling which offends constitutional standards under *Ramey* (see *Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 7-9 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Ford* (1979) 97 Cal.App.3d 744, 748-749 [158 Cal.Rptr. 859]; *People* v. *Rudin* (1978) 77 Cal.App.3d 139, 142 [143 Cal.Rptr. 360]; *People* v. *Ramirez* (1970) 4 Cal.App.3d 154, 157 [84 Cal.Rptr. 104]). The entry here was invited so the intrusion was permissible. It follows there was no failure to raise an issue thus withdrawing a crucial defense. Accordingly, Evans' argument concerning his right to effective representation of counsel fails (see *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859]).

Judgment affirmed.

Staniforth, J., and Hamrick, J.,* concurred.

A petition for a rehearing was denied July 31, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.